AMERICAN FIDELITY & CASUALTY COMPANY *v.* MCKEE.

4-5515               130 S. W. 2d 12

Opinion delivered June 19, 1939.

*Westbrooke & Westbrooke, James W. Wrape* and *Louis Tarlowski,* for appellant.

*H. M. Cooley, Horace Sloan, Chas. D. Frierson* and *Charles Frierson, Jr.,* for appellees.

GRIFFIN SMITH, C. J. December 26, 1936, a bus owned by W. A. McKee[1] ran into the rear of a bus owned

[1] W. A. McKee, with headquarters at Jonesboro, did business as "McKee Bus Line."

and operated by Dixie Greyhound Lines, Inc., with consequent injuries to a number of passengers.

July 27, 1936, American Fidelity and Casualty Company issued to McKee its policy of public liability insurance, by the terms of which McKee was indemnified within certain limitations against loss. ". . . from the liability imposed by law upon the assured arising or resulting from claims upon the assured for actual damages to persons accidentally receiving bodily injuries . . . by reason of the ownership, maintenance or use of any of the automobiles or motor vehicles as enumerated and described in Statement VI of the schedule of statements only while being operated for the purposes stated and subject to the limitations in Statement VIII of said schedule."

Provisions of Statement VIII were: "The above-described automobiles and motor vehicles are and will be used only for transportation of passengers for compensation purposes, and will be operated as follows: On schedule over route from Jonesboro, Arkansas, to Cape Girardeau, Missouri, and from Paragould, Arkansas, to Sikeston, Missouri, as authorized by the Arkansas Corporation Commission and the Missouri Public Service Commission, and this insurance covers no other use or operation."

It is alleged that following the December 26th collision (which was promptly reported to the insurance company) an investigation was made by insurance adjusters and more than a dozen claims were settled, but agreements could not be made with the two most seriously injured passengers.

March 22, 1937, the insurance company (hereinafter referred to as the company) informed McKee and Dixie Greyhound Lines that it was not liable under the policy, and it refused to handle the unadjusted claims. Thereupon, McKee and the Greyhound Lines settled the two claims in question for an outlay of $2,981.91, inclusive of costs, attorneys' fees, etc.

Upon refusal of the company to reimburse McKee and the Greyhound Lines for amounts so expended, suit

was brought, resulting in a judgment in favor of McKee for $525.46, and in a judgment in favor of Greyhound for $2,431.45, from which is this appeal.

Business arrangements between McKee and Greyhound, in addition to the sale of tickets, were that McKee buses might, for a specific rental charge, be used by Greyhound over the latter's routes when press of traffic required additional facilities. On such occasions McKee would furnish a driver, and one of his buses would be operated for the account of Greyhound to carry its overload. This was the situation December 26th when the collision occurred.

On several occasions, when a McKee bus was to be so used, special insurance coverage was secured for the particular trip—this for the reason that the McKee bus, when so engaged, would not be operated over the route mentioned in Statement VIII of the policy.

It is the contention of appellees that to obviate necessity for procuring particular permits or special trip insurance coverage, a general endorsement was issued by the company, as follows:

"In consideration of a premium charged hereunder, it is understood and agreed that coverage under [Policy PT-21735, issued July 27, 1936] to which this endorsement is attached is extended to include the Dixie Greyhound Lines, Inc., of Memphis, Tennessee, as their interest may appear, in the operation of any equipment described and insured hereunder. This indorsement to be effective from the 28th day of August, 1936, . . . at the place where any operation covered hereby is conducted, as respects that operation, or at the place where any injury covered hereby is sustained, as respects that injury. Nothing herein contained shall be held to vary, alter, or waive or extend any of the agreements or conditions of [Policy PT-21735] other than as above stated."

By special indorsement of October 26, 1936, a 21-passenger "Mack" bus was added to the list of motor vehicles permissively used by McKee, and this was the vehicle rented to Greyhound December 26 for an over-

load from Jonesboro to Trumann, on Highway 63. The collision occurred about three miles from Jonesboro. McKee was a resident of Jonesboro.

Errors urged are (1) that the court should have sustained defendant's motion to quash service of summons, and should have dismissed for want of jurisdiction; (2) that the court erred in giving, on its own motion, instruction No. 2, over the exceptions of the defendant; (3) that the court erred in giving, on its own motion, instruction No. 3, over the exceptions of the defendant; (4) that the court erred in refusing defendant's request for a peremptory instruction at the close of plaintiff's proof, and again at the close of all the evidence; (5) that the court erred in refusing to give defendant's requested instructions numbered five and ten, and (6) that the verdict of the jury is against the law and the evidence.

*First.* The defendant appeared specially and moved to quash the summons. It alleged that American Fidelity and Casualty Company was a Virginia corporation, authorized to transact in Arkansas an automobile public liability and property damage insurance business; that it was not authorized to transact a surety business in this state; that at no time had it kept or maintained in Craighead county a branch office or other place of business, nor did it have in Craighead county an agent or person upon whom service of summons could be had. The summons it was sought to quash was served on E. W. Moorhead at Little Rock, who was designated by the defendant as its Arkansas agent.

Appellant's certificate recites that it is authorized "to transact the business of automobile public liability and property damage insurance within the state." The Insurance Commissioner, by a special communication, certified that the company was not authorized to engage in surety business in Arkansas.

Assuming that service was had under § 7760 of Pope's Digest, appellant urges that such statute, permitting the defendant to be sued in the county in which the plaintiff resides, applies only to surety companies,

and that the policy relied upon by appellees is not of the character contemplated when act 187 was adopted in 1903.

We concur in appellant's position that the section in question, by its express terms, applies only to surety companies. But it does not follow that because of this restriction there is no statute under which service could be had.

Section 1 of act 34 of 1887, as amended by act 24 of 1897, provides: "When any loss shall occur by fire, lightning, or tornado, in the burning, damage or destruction of property upon which there is a policy of insurance, or when any death has occurred of a person whose life shall have been insured, or in case of death or injury of any one having a policy of accident insurance, the assured or his assigns, in case of fire insurance, may maintain an action against the insurance company taking the risk, in the county where the loss occurs. And the beneficiary, or his assigns, in case of life insurance, may maintain an action against the insurance company that has taken the risk, in the county of the residence of the party whose life was insured, or in the county where the death of such party occurred."

It may be conceded that this statute would not authorize the proceeding with which we are dealing—being, as it is, limited to fire, lightning, tornado, life insurance, or "to one having a policy of accident insurance." Those who were injured in the bus accidents are not suing upon policies they carried. The suit is clearly one on a policy of public liability, and is not mentioned in the act just quoted.

However, in 1921, by act 493 (Pope's Digest, § 7676), there was this enlargement of the venue statutes: "All the provisions of the laws of this state applicable to life, fire, marine, inland, lightning or tornado companies shall so far as the same are applicable, govern and apply to all insurance companies transacting any other kind of business in this state, so far as they are not in conflict with provisions of law made specially applicable thereto."

Since § 7675 of Pope's Digest authorizes suits in the county of the residence of the party whose life was insured, or in the county where the death of such party occurred, in the case of life insurance, and since § 7676 directs that the provisions of § 7675 shall "govern and apply to *all* insurance companies transacting any other kind of business in this state," it must be held that public liability insurance is encompassed within the words "other kind of [insurance] business;" and necessarily the right to sue on the McKee-Greyhound policy would be in the Jonesboro district of Craighead county, where the collision occurred.

*Second.* On its own motion the court instructed that ". . . the plaintiffs are not covered by the policy of insurance in this case." However, the issue of waiver was submitted.

Appellant's contention is that coverage under the policy was limited to operations on McKee's routes from Jonesboro to Cape Girardeau, or from Paragould to Sikeston, and since the happening was not on either of these routes, there could be no recovery. Appellees argue that the route limitations applied only in those cases where McKee was using one of his buses for his own purposes, and that the indorsement of August 28 was meant to protect McKee and Greyhound when the latter elected to utilize a McKee bus in handling extra traffic. It is further urged that in the absence of an express limitation in the indorsement restricting operation of a McKee bus to a particular route in conformity to the original policy, its effect was to "extend" protection generally to such extrordinary operations as the trip of December 26. In the alternative, appellees insist that, if the endorsement is ambiguous, it was subject to explanation. Conflicting oral testimony was introduced. Therefore, appellees insist, a jury question was presented if in fact the policy and endorsements were ambiguous.

Bearing in mind the admitted course of conduct engaged in by the respective parties; that McKee had procured special indorsements for particular trips made by

Greyhound when the latter used his buses on a per mile basis; that the insurance company had knowledge of the several routes over which McKee and Greyhound were authorized to operate; that the endorsement was "in consideration of the premium charged *hereunder,*" and that over a period of three months following the collision appellant did not deny liability, but on the contrary seemingly recognized its responsibility and made numerous settlements and employed legal talent to procure releases for its benefit;—in the light of these facts and the affirmative conduct shown, we examine the endorsement to determine its effect.

"Coverage *under the policy to which this indorsement is attached,*" it is said, "is *extended* to include the Dixie Greyhound Lines, Inc., . . . as their interest may appear *in the operation of any equipment described and insured hereunder.*"

It was further provided that the endorsement would be effective " . . . at the place where any operation covered hereby is conducted, as respects that operation, or at the place where any injury covered hereby is sustained, as respects that injury."

A limitation was that "nothing herein contained shall be held to vary, alter, or waive or extend any of the agreements or conditions of [Policy No. PT-21735] other than as above stated."

The indorsement, by its express terms, formed a part of the policy. The equipment described "and insured hereunder" was the bus owned by McKee which featured in the collision, and coverage under the policy was *extended* to include Greyhound Lines, "as their interests might appear."

Interest of Greyhound was in its leased operation of the McKee facilities. The word "hereunder" used in the endorsement did not of itself describe any equipment. Reference must be had to the principal policy, and to other indorsements, to ascertain what buses or trucks McKee was permitted to operate.

When the construction we concur in is given the endorsement, and "hereunder" is held to identify and to tie in with the primary policy, it may be argued that coverage was to be effective only " . . . at the place where any operation covered hereby is conducted," and that "hereby," when so read, necessarily restricted insurance of Greyhound to a route designated in the policy. Such a construction, however, would paralyze rights granted by preceding expressions by which protection was extended to Greyhound "as its interests might appear . . . in the operation of any equipment described and insured hereunder."

It is argued (we think fallaciously) that Greyhound's interests went only to protection from contingent liability which might arise through acceptance or sale of interline tickets. Nothing is said in the endorsement about tickets. On the contrary, operation of *equipment* is the subject-matter.[2]

---

[2] In substantiation of its contention that there was no liability unless the transaction occurred on one of the McKee routes, appellant offered the testimony of Chigghizola, partner with Treadwell and Rabb in Underwriters' Service Agency. This agency was authorized to write policies for appellant. Chigghizola said that Bomer of the Greyhound Lines called Underwriters' Service Agency, asking if appellant had the McKee Bus Line insured. Witness answered in the affirmative. Bomer then stated that Greyhound had an interchange ticket arrangement with the McKee lines, and inquired if Greyhound could be insured in the McKee policy. For this reason, according to Chigghizola, the indorsement was attached.

McKee, however, testified that he had Bomer call the writing agency; that Bomer talked with Treadwell; that Bomer stated over the telephone that he wanted the McKee "rider" to protect both McKee and Greyhound in instances where McKee was transporting Greyhound overloads. Chigghizola testified that it was he, and not Treadwell, who talked with Bomer. McKee was then recalled and testified that Bomer had called the agency in his presence immediately after he (McKee) had been discussing the matter of insurance for bus overloads; that Bomer called for Treadwell; that he heard what Bomer said, and that Bomer did not say his company wanted a rider to cover interchange tickets, and that there "was no conversation along that line at all from Bomer's end of it." On cross-examination Chigghizola admitted that the insurance rider was signed by Treadwell, and that the letter forwarding the indorsement to McKee was signed by Treadwell.

If by the indorsement the insurance company intended to reserve to itself some advantage not expressed with clarity, or if it did not intend to grant some concession reasonably to be inferred from the words selected, and if by a fine shade of meaning or a literal evaluation of terms the insurer would be relieved of liability, it becomes the duty of courts to apply such common-sense construction or rational application as will give effect to the intention of the parties and to the obvious objective they had in mind, if such intent can be gathered from the writing. Since forms utilized in contracts of insurance and the indorsements concurrently or subsequently attached are almost invariably prepared by the insurer, the language utilized to declare an intent should be liberally construed in favor of the one who had no part in selecting phrases and transcribing them; or, expressed differently and more simply, such contracts should be strictly construed against the company.[3]

By holding as a matter of law, as we do, that under the admitted facts appellant's undertaking was to indemnify McKee and the Greyhound Lines against liability of the kind they incurred in the circumstances reflected by the record, it follows that the trial court was in error in instructing the jury that the policy with its indorsements was not effective primarily, but that appellant's only liability, if any, arose because of its conduct in assuming charge of the investigations and settling with injured passengers.

In the view we have taken its becomes unnecessary to decide the question of ratification or waiver, and other points advanced.

The judgments are affirmed.

---

[3] Blashfield's Cyclopedia of Automobile Law and Practice, v. 6, § 3521; *Gibson* v. *Continental Casualty Co.*, 178 Ark. 1090, 13 S. W. 2d 621; *Fowler* v. *Unionaid Life Ins. Co.*, 180 Ark. 140, 20 S. W. 2d 611; *Travelers' Protective Association* v. *Stephens*, 185 Ark. 660, 49 S. W. 2d 364.