THE HOME INDEMNITY COMPANY *v.* SNOWDEN.

5-262                           264 S. W. 2d 642

Opinion delivered February 1, 1954.

[Rehearing denied March 8, 1954.]

*Herman Spears, Graham Moore* and *Nelson, Norvell & Floyd,* for appellant.

*Hale & Fogleman,* for appellee.

MINOR W. MILLWEE, Justice. Appellee, Robert B. Snowden, recovered a verdict and judgment against appellant, The Home Indemnity Company, for $8,533.85 which appellee had paid to settle a damage suit filed against him in the United States District Court of Arkansas by Mrs. Fred Lingner for the alleged negligence of appellee and his agents resulting in the death of Mrs. Lingner's husband while working in a frozen food locker plant belonging to appellee at Wharton, Texas.

At the conclusion of all the evidence in the case appellant moved for a directed verdict in its favor on the grounds: (1) that there was no evidence that appellee was guilty of any negligence that caused the death of Fred Lingner; (2) there was no evidence that appellant or its agents were guilty of bad faith in refusing to settle the suit pending against appellee in the United States District Court of Arkansas. Appellant's principal contention on this appeal is that the trial court erred in refusing to sustain the motion for a directed verdict on either or both grounds. In testing the sufficiency of the evidence to support the verdict on these issues we are required to consider the evidence in the light most favorable to appellee, and in support of the verdict, under our well settled rule.

Appellee, a resident of Crittenden County, Arkansas, owned a number of frozen food locker plants in 1947. One of these plants was located at Wharton, Texas, and was under lease to L. M. Guffey. In April, 1947, appellant issued to appellee its public liability insurance policy against injury or death, limited to $5,000 for any one person and $10,000 for any one accident, arising out of operation and maintenance of the said locker plant.

In May, 1947, appellee entered into a contract to sell the locker plant to L. M. Guffey, conditioned upon the installation of certain equipment and the making of certain repairs by appellee. Appellee agreed to send Joe Tirello, his construction foreman in locker plant work, to Wharton to install two locker doors and fix obvious insulation leaks. He also agreed to order and pay for

one 5 HP Frigidaire compressor and authorized Guffey to make a contract with a competent refrigeration man to install the compressor at appellee's expense.

Guffey entered into a contract with Fred Lingner, a refrigerator contractor, to install the compressor, and Lingner employed E. B. Van Hoesen, another refrigerator man, to assist him in performing the work. Van Hoesen testified that during the course of the work, Tirello made an additional oral contract with Lingner to disconnect a certain unit theretofore in use and to connect two of the three units that had theretofore been used to operate two vaults, to one vault only, the 5 HP unit operating the other. Tirello directed Lingner to blow the old gas out of the line by the use of air. The blowing of the old gas out of the lines was done by opening the lines and letting the compressors pump air from the open air into the lines; the atmosphere was humid and moisture was pumped into the lines. Methyl chloride, a toxic gas marked dangerous on the container, was used to refill the lines. The system was apparently working all right, so Tirello left and returned to Memphis. The moisture in the lines condensed, froze up, and stopped circulation of the refrigerators. Lingner and Van Hoesen opened valves in an attempt to let gas blow moisture out and dry the system, and the gas got into the room. The gas made both men sick and Lingner died on June 2, 1947, from methyl chloride poisoning.

When appellee was notified of the incident he sent Tirello back to Wharton and another contractor was hired to correct and complete the repair work. Guffey declined to go through with the purchase, but after Snowden agreed to indemnify him against any liability for the death of Lingner another contract of sale to Guffey was agreed upon in July, 1947. About this time, Mrs. Lingner called on Richard B. Cole, an attorney of Houston, Texas, who began to investigate the matter and later took a statement from Van Hoesen. Snowden had purchased his insurance from an agent named Blount, and some time after the incident and before November 27, 1947, he

reported it to Blount. As a result, the attorneys for appellant in Memphis wrote to Mr. Snowden on the latter date requesting a letter from Snowden setting out the details of the occurrence and asking for a copy of any agreement with Lingner's widow as to a settlement, in order that they might complete their file and investigation. On December 2, 1947, appellee answered the request. In this letter, Snowden stated certain facts in connection with Lingner's death which led him to believe Lingner was an independent contractor and that his own errors caused his demise. He also expressed the belief that a claim would in all probability never arise, but recommended an accurate assembly of the facts while they were still fresh in the minds of all concerned and the taking of Guffey's deposition. Appellant's Memphis attorneys acknowledged appellee's letter on December 10, 1947, and advised that A. A. Nowlin, appellant's claim manager at Dallas, Texas, had been asked to handle the matter since the accident occurred in Texas.

On May 26, 1949, Mrs. Fred Lingner, as administratrix of the estate of her husband, filed separate suits against appellee in the United States District Court of Arkansas and the District Court of Wharton County, Texas, through her attorneys Richard B. Cole and Gordon & Gordon of Morrilton, Arkansas. The complaint alleged damages in the sum of $83,950 on account of the death of Fred Lingner which allegedly resulted from the negligent acts of appellee and his representative and agent, Tirello, who was also joined as a party defendant.

After receipt of appellee's letter of December 2, 1947, and before the filing of the suit by Mrs. Lingner on May 26, 1949, appellant made no investigation of the case. No effort was made to "assemble the facts" or take the statement of Guffey or any other prospective witness until June 23, 1949, when an answer was about due in the Lingner suit. On that date, R. B. Eades was sent to Wharton from appellant's Dallas office to make an investigation.

Shortly after the suits against appellee were filed, he was advised by counsel for appellant that "while all

necessary steps will be taken for the protection of our mutual interests, this is to advise you that you may, if you care to do so, and at your own expense, employ personal counsel to protect your interests over and above the limits of your policy.'' Snowden employed Davis, Brown, McCloy and Donelson of Memphis.

On June 13, 1949, appellee's personal counsel and appellant's attorneys held a conference to discuss the defense of the case. Appellant's attorneys, as on other occasions, urged the proposition that appellant would not be liable under its policy if it were shown that Lingner was an employee of appellee as alleged in Mrs. Lingner's complaint. During this time, attorneys for appellee began negotiating with counsel for Mrs. Lingner for a settlement, and requested that appellant contribute to such a settlement. Attorneys for appellant denied this request both orally and in letters of June 18 and June 25, 1949, and again asserted their contention that the policy excluded coverage of liability to employees of Snowden. This contention was alleged in the answer, and it was not until the trial of the instant case that appellant admitted that Lingner was an independent contractor.

Attorneys for appellee investigated the case thoroughly and ascertained that a serious question would be presented as to whether Tirello, as appellee's agent, had told Lingner the details of how the job was to be done and that his instructions could have been a possible cause of Lingner's death, and being a question of fact for a jury to determine, the damages could have been most substantial, the deceased being a relatively young man with a good earning capacity, leaving a widow and two minor children.

After considerable negotiation, appellee's attorneys obtained offers of settlement from Mrs. Lingner's attorneys in the amount of $8,000. A conference with reference to the proposed settlement was held on June 22, 1949, at which the appellant refused to contribute to a settlement. On June 24, 1949, appellee submitted his check for $3,000 to appellant's attorneys and demanded

that they settle the claim. The same day appellee's attorneys received a letter from appellant reiterating that there was no liability under the information furnished by appellee and that if deceased were an employee of Snowden, there would be no liability against the appellant. In another letter from appellant's attorneys on June 25, 1949, the settlement offer was again rejected. On July 1, 1949, Snowden wrote the home office of the appellant in New York, outlining in detail the dealings with the company's attorneys and demanding settlement of the claims. No reply was received to this letter.

Mrs. Lingner's attorneys pressing the matter, Snowden gave his check for the full settlement August 16, 1949. On August 26, 1949, releases were executed by the Lingners, and the case disposed of in Wharton County, Texas, and the case was dismissed in Arkansas on September 8, 1949. On October 14, 1949, appellee demanded that appellant reimburse him in the amount of the full settlement of $8,467.77. This demand was refused on February 15, 1950, and thereafter this action was brought on March 29, 1951.

The policy involved here contained the usual provisions that insurer should have the right to make such investigation and settlement of any claim or suit as it might deem expedient, and that no action would lie against insurer until the amount of insured's obligation to pay shall be determined by judgment or by agreement of the claimant, insured and the insurer.

In support of their respective contentions on this appeal, counsel on both sides have cited numerous cases from other jurisdictions involving the questions under consideration. The facts in none of these cases are exactly parallel to those in the instant case. Some of them are similar to our own case of *American Fidelity and Casualty Co.* v. *McKee*, 198 Ark. 601, 130 S. W. 2d 12, where this court held that the insured was authorized to make a settlement of the injured persons' claims, and entitled to reimbursement from the insurer, if the latter unjustifiably refuses to defend a suit, even though the

policy purports to avoid liability for settlements made without the insurer's consent. From the many cases involving suits similar to this one, certain principles and rules have been formulated which are applicable here.

In 29 Am. Jur., Insurance, § 1077, it is said: "Under liability or indemnity policies in which the insurer assumes the duty of defending or settling suits against the insured, this obligation is one requiring due care and a strict performance in utmost good faith. In such case, the insurer owes the duty to exercise reasonable care in conducting the defense, and is liable for damages resulting to the insured by reason of its negligence in performing such duty." In § 1079, the author further says: "It is generally agreed that under policy provisions giving the insurer the right to defend and settle claims against the insured, the insurer may be held liable to the insured for any damage to the insured ensuing where the insurer acts with bad faith toward the insured and improperly refuses or fails to compromise the claim involved. Moreover, there is authority to the effect that this liability of the insurer to the insured also obtains if the insurer negligently fails to settle a claim against the insured."

While the insured is generally prohibited from making a settlement of a claim under policies giving that right to the insurer, a different rule obtains where the insurer itself, in bad faith, breaches the contract by arbitrarily refusing to settle. As is stated in 45 C. J. S., Insurance, § 937b: "The provision against settlement by insured cannot be taken advantage of by insurer, where it unreasonably delays to take any action, after notice of the claim, or where it breaches its contract, by refusing to defend or settle and denying liability, or by withdrawing from the case, in either of which cases insured is released from its agreement not to settle, and has the right, provided he acts in good faith and with due care and prudence, to make a settlement of the claim or suit; and the amount paid in such settlement, if reasonable, may be recovered from insurer." See, also, Appleman, Insurance Law and Practice, § 4690.

The trial court in its instructions submitted the respective contentions of appellee and appellant to the jury as to whether appellee, or his agent Tirello, was guilty of any negligence that caused the death of Fred Lingner; also as to whether appellant was guilty of bad faith in defending and refusing to settle the suits pending against appellee. We have carefully examined these instructions and find that they fairly submitted these issues to the jury under the principles announced above, and other rules applicable in such cases. We are also of the opinion that the evidence adduced by appellee was substantial and sufficient to sustain the jury's conclusion on the issues of appellee's negligence and the bad faith of appellant. It follows that the jury's determination of liability against the appellant must be affirmed.

However, a majority of the court are of the opinion, in which the writer does not concur, that the trial court erred in refusing to instruct the jury that if they found for appellee, they would assess his damages at not more than $5,000, the policy limit. This error may be cured by reducing the judgment to $5,000. With this modification, the judgment is, therefore, affirmed.

ROBINSON, J., dissenting. The majority has affirmed this case on the theory that there was sufficient evidence to go to the jury on the question of bad faith and negligence on the part of the insurance company; but no evidence is pointed out which indicates the appellant at any time acted in any manner other than a fair-minded and reasonably prudent person would have acted in the circumstances. In the first place, the insured did not notify the insurance company of the happening of the accident for about six months after it occurred. The appellant company, according to the terms of the policy, could have seized upon the late notice to deny liability on its part, but did not do so and waived the policy provision specifying the time in which notice must be given. This certainly does not indicate bad faith. In my opinion there is not a line of testimony in the record from which an inference can be drawn that the insurance company was negligent or did not act in the utmost of good faith.

When Mr. Snowden gave notice, six months after the date of the mishap, he stated that Lingner was an independent contractor and died by reason of his own negligence. According to the record, Snowden gave the correct information. The deceased, Fred Lingner, was a refrigeration contractor; he was an expert in that capacity and so held himself out to the public; that is the reason he was employed in the first instance. It is true the evidence shows that Tirello, an employee of Snowden, directed Lingner to use air in blowing out the pipes; but such act injured no one; and by no process of the imagination can it be considered that this method of removing old gas from the pipes was the proximate cause of the injury to Lingner. In fact, one could with as much logic contend that the manufacturer of the plant was liable. Lingner, a contractor employed because he was an expert engaged in repair work on refrigerators, used poisonous gas to refill the refrigeration system; when Tirello left Wharton to return to Arkansas, the refrigeration plant was working in a satisfactory manner; and it was after he left that Lingner of his own accord opened the valves permitting the poisonous gas to escape, thereby causing his own death.

Although the majority stresses the fact that the insurance company made no investigation, nothing is pointed out that could have been discovered by an investigation which would have caused a revaluation of the case. The failure of the company to make an investigation was not due to negligence nor bad faith; it was simply due to the fact that when it received notice of the mishap more than six months had expired. Nothing had been said or done that would indicate that anyone contemplated filing a lawsuit. It was the opinion of the insurance company that it had received correct information from Mr. Snowden as to how the accident occurred, and that to begin an investigation at that late date would serve no purpose other than possibly to stir up a lawsuit.

The majority appears to make a point of the fact that the insurance company advised the insured that he could select a lawyer of his own choice to represent him in the

matter if he cared to do so; this was not a suggestion that the insurance company would not defend the case according to the best of its ability, but there was only $5,000 in insurance and Snowden had been sued for $83,950; and in these circumstances it was natural and proper that the insurance company suggest that perhaps Mr. Snowden would want his own lawyers as well as the insurance company lawyers to see after the case.

Mrs. Lingner had also alleged in her complaint that Lingner was an employee of Snowden; the insurance company made no contention that this allegation was true, and sought no evidence to show that it was true; but it merely called Snowden's attention to the fact that if this allegation was true, the insurance company would not be liable as the policy did not protect Snowden in the event of injury to employees.

Mr. Snowden employed counsel and they immediately started negotiations for a settlement; and in a very short time reached an agreement with the plaintiff that the case be settled for about $8,000. Immediate demand was made upon the insurance company that it pay its full liability on the policy, $5,000. Undoubtedly the insurance company would have been willing to contribute a portion of the limit of the policy to a settlement of the cause, not because it was considered that Mrs. Lingner had a case and could recover or that there was any danger of a recovery, but purely to retain the good will of a policyholder, plus the nuisance value of a case of this kind. Snowden had been sued for $83,950 and his policy of insurance protected him only to the extent of $5,000. The premium on the policy was only $10; he could have had more protection if he had wanted it. When he was sued for such a large sum and had such small protection, he became extremely apprehensive; apparently he would be good for a judgment for the entire amount and rather than take that chance, he personally paid the $8,000 as settlement in full.

All of the evidence points to the fact that there was no liability, and in all probability no jury case could be

made; and no experienced lawyer representing the insurance company in this case would have advised the company to pay to the fullest extent of its liability. In my opinion the insurance company was neither negligent nor acting in bad faith in refusing to pay the full amount for which it was liable under the terms of the policy.

It is hard to imagine a case where the plaintiff would be less likely to recover than the one filed against Mr. Snowden; and to say that he is entitled to indemnity in the case at bar is to say that in all cases where one who is good for a judgment is sued for a large sum and only has a small amount of insurance, the insurance company must pay by way of a settlement the full amount of the policy, at the insistence of the insured, regardless of the merits of the case. I cannot subscribe to that doctrine. In my opinion the cause should be reversed and dismissed.

Therefore I respectfully dissent.