Roy C. **RITTER**, Plaintiff,

v.

**UNITED STATES FIDELITY AND GUARANTY COMPANY**, Defendant.

No. F–76–60–C.

United States District Court, W. D. Arkansas, Fayetteville Division.

July 27, 1977.

H. Franklin Waters, Crouch, Blair, Cypert & Waters, Springdale, Ark., for plaintiff.

Tilden P. Wright, III, Putman, Davis & Bassett, Fayetteville, Ark., for defendant.

JOHN E. MILLER, Senior District Judge.

## OPINION

The plaintiff, Roy C. Ritter, on November 15, 1976, commenced this action against defendant, United States Fidelity and Guaranty Company, hereinafter called "USF&G", seeking a judgment or decree of the court of the rights and other legal remedies of the parties hereto under Title 28, Section 2201, et seq. U.S.C.A.

The plaintiff is a citizen of Arkansas and resident of Springdale, Washington County. The defendant is an insurance company incorporated under the laws of a state other than Arkansas, but is authorized to do business and is doing business in the State of Arkansas.

The amount involved exceeds the sum and value of $10,000.00, exclusive of interest and costs. Jurisdiction is vested in the court by reason of diversity of citizenship and the amount involved.

The plaintiff alleges that on March 31, 1976, defendant issued to him a policy of insurance designated by the company as "Personal Excess Indemnity Policy" No. PEP97454. The policy covered a period of time from March 31, 1976 to March 31, 1979 and has been in full force and effect since March 31, 1976.

Under "Insuring Agreements" the policy provides:

"(1) The company will indemnify the insured for ultimate net loss which the insured shall become legally obligated to pay because of personal injury or property damage."

In Section III, the policy provides that the company shall:

"(a) Defend any suit against the insured seeking damages on account of personal injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent and may make such investigation and settlement of any claim or suit as it deems expedient.

(b) Pay all expenses incurred by the company, all costs taxed against the insured in any such defended suit and all interest on the entire amount of any judgment therein which accrues after entry of the judgment and before the company has paid or tendered or deposited in court that part of the judgment which does not exceed the limit of the company's liability thereon."

In the section entitled "Definitions", it is provided:

" 'Personal Injury' means:

(2) Injury arising out of . . .

(b) Libel or slander or a publication or utterance in violation of an individual's right of privacy;"

The plaintiff, in Section 8 of his complaint, alleged that on or about October 6, 1976 an organization calling itself, Arkansas Community Organizations for Reform Now, for itself and allegedly for its members, naming four of them, filed suit against the plaintiff, Roy C. Ritter, in United States District Court for the Western District of Arkansas, Fayetteville Division, No. F–76–51–C, alleging that such organization and such alleged individual members sustained damages by reason of certain alleged actions on the part of the plaintiff, Roy C. Ritter. A copy of the aforesaid complaint is attached as Exhibit "B". In that complaint, the Arkansas Community Organizations for Reform Now, hereinafter referred to as "ACORN", alleged that it is an unincorporated association with its principal place of business and main office in Little Rock, Arkansas; that its membership consists primarily of low and moderate income families who are organized into more than fifty local groups throughout the state for the purpose of solving problems of concern to low and moderate income persons; that ACORN and its members promoted the signing of an initiative "lifeline" petition, a copy of which was attached to its complaint against Ritter who was sued individually and in his official capacity as the Mayor of Springdale. The petition was published on the back page, page 14, of the September 27, 1976 issue of the Springdale News. Mr. Ritter, as Mayor of the City of Springdale, on September 27, 1976, ran an ad in the Springdale News which stated:

"As Mayor of Springdale I am very much concerned about what the outcome will be when our business community and the citizens of Springdale fully realize what the Lifeline Rate will do to our community if it was to pass and become law. If the Lifeline Rates would become a reality approximately 27 businesses in Springdale that employ most of the workers in our city would have their electric bills increased 40.1 per cent. Our city has grown and prospered by people working together. If this unfair program is allowed to pass and the extra burden is put on the companies that furnish most of the employment in Springdale's city limits, I think we will see a drastic setback in Springdale's progress. This Lifeline Rate program will put the businesses of Springdale at a disadvantage with competition from other areas. This will reflect on their ability to maintain a good salary schedule.

Immediately following the statement as above set forth, apparently as a statement of Mr. Ritter, "and was signed by the following people, many have told me they didn't realize what it was."

In the complaint of ACORN against Mr. Ritter, the plaintiff also denies that many of the signers of the petition had told Mr. Ritter that they didn't realize what the petition was, and alleges that the false assertion and broad reference subjected plaintiffs to public hatred, contempt, obloquy and ridicule in that plaintiffs have been presented as ignorant fools and irresponsible citizens. In Section 15 of the Complaint, ACORN alleged that the effect of Ritter's activities and consequent publicity has been to cast a pall on the constitutionally protected activity in the City of Springdale and the northwest region of Arkansas and to deter plaintiffs and others from exercising their First Amendment Rights by instilling fear that the signers of such petitions will be subjected to harassment in home, neighborhood and workplace and will be subjected to job discipline and dismissal, and they ask for damages in the sum of $1,000,000.00.

In paragraph 12 of the plaintiff's complaint, he alleges:

"That there is an actual, real and substantial controversy now existing between the plaintiff and the defendant in respect to their conflicting claims and legal relationships with reference to the policy of insurance described above and that by order and decree herein all rights and legal relationships of the parties hereto should be immediately, definitely and judicially determined, adjudicated and declared."

In due time, the defendant, USF&G, filed its answer, the sum and substance of which is that there is no coverage of the actions alleged in the complaint under the policy of insurance.

"Specifically, the allegations of said complaint are not within the definitions of personal injury set forth in said policy
. . ."

On April 21, 1977, the attorneys for Mr. Ritter and the attorneys for the defendant, USF&G, entered into Stipulations agreeing that:

The court has jurisdiction of the parties and the subject matter herein involved. That the policy was in full force and effect at the time that the actions complained of by ACORN against Mr. Ritter allegedly took place. Before ACORN filed the suit against Mr. Ritter, he requested the defendant, USF&G, to take charge of the defense of the suit, which USF&G refused to do. Later Mr. Ritter made the same request of the insurance company and it again refused to provide defense.

While this case was pending before Judge Williams, and during a conference in his chambers on March 22, 1977, counsel for the parties stated that the issues can be decided on briefs.

Counsel for the parties have filed excellent briefs in support of their respective contentions which the court has considered.

In the consideration of the question as to whether an insurance company has the duty to defend a suit filed against its insured, the cardinal rule is that the policy of insurance will be interpreted and con-

strued liberally in favor of the insured and strictly against the insuror. *First Heritage Life Assurance Company v. Butler*, 248 Ark. 1164, 455 S.W.2d 135.

In *Lee v. Aetna Casualty and Surety Company*, 2d Cir. (1949), 178 F.2d 750, Judge L. Hand, Chief Judge, at page 752 said:

"Whether the insurer ought to defend such an action at least until it appears that the claim is not covered by the policy is not free from doubt; but it seems to us that we should resolve the doubt in favor of the insured. In most cases—the case at bar was one—it will not be difficult for the insurer to compel the injured party to disclose whether the injury is within the policy; and, if it transpires that it is not, the insurer need go on no longer. There may be cases, however, in which that question will remain uncertain even until the end of the trial, and, if the defendant is right, the insured will be obliged to conduct the defense of a claim which it turns out the insurer has promised to pay."

On page 753, the court said:

"When, however, as here, the complaint comprehends an injury which may be within the policy, we hold that the promise to defend includes it. Finally, if there be an ambiguity in the language of the policy, since the choice is between imposing the burden of the defence upon the insurer or the insured, the canon contra proferentem must prevail, especially as the case involves construing an insurance policy."

In an annotation appearing in *50 A.L. R.2d 458*, the annotator, at page 506, Section 24 said:

"Where a complaint alleges facts which represent a risk outside the coverage of the policy but also avers facts which, if proved, represent a covered risk, the insurer is under a duty to defend. Stated differently, the fact that grounds of damage against the insured other than those stated in the policy, and liability against others than the insured, were pleaded, is immaterial if the injured person pleaded any grounds against the insured coming within the terms of the policy."

In *Equity Mutual Insurance Company v. Southern Ice Company*, 232 Ark. 41 (1960), 334 S.W.2d 688, beginning at the bottom of page 48 of 232 Ark. of page 693 of 334 S.W.2d, the Supreme Court of Arkansas said:

"We hold that in the case at bar, Equity Company violated its obligation to defend these assureds. We have only to look at the allegations—previously copied—in the third party complaint (Case No. 4168) and the allegations against The Borden Company and Gover in Case No. 4210, to see that the Equity Company has breached its obligation to defend its insureds, as distinct from its duty to pay. The great weight of authority, in cases like this and involving the insurer's duty to defend, is that the allegations in the pleadings against the insured determine the insurer's duty to defend. It is not what the insurance company may have gleaned from its outside investigation: it is the allegations made against the insured— however groundless, false, or fraudulent such allegations may be—that determine the duty of the insurer to defend the litigation against its insured. In *Am.Jur. Vol. 5A page 122 "Automobile Insurance" § 119*, the holdings are summarized: "As a general rule, the obligation of an automobile liability insurer under a policy provision requiring it to defend an action brought against the insured by a third party is to be determined by the allegations of the complaint in such action.""

In *Carter v. Aetna Casualty and Surety Company*, 8th Cir. (1973), 473 F.2d 1071, Judge Bright, Circuit Judge, writing for the court said at page 1075:

"Arkansas law recognizes that there is an obligation of an insurer to defend a lawsuit brought against its insured, if the cause of action is within the coverage of the policy. This obligation is broader than the insurer's obligation to pay the judgment, and is determined by the allegations of the complaint against the insured, regardless of the falsity of any of these allegations. *Equity Mutual Insurance Co. v. Southern Ice Co.*, 232 Ark. 41, 334 S.W.2d 688 (1960). Aetna,

therefore, breached its contract, by failing to meet its obligation to defend Mary Margaret, since the complaint against her alleged a factual setting coming within the coverage of Aetna's policy. See *Equity Mutual, supra* [334 S.W.2d] at 693; *Home Indemnity Co. v. Snowden*, 223 Ark. 64, 264 S.W.2d 642, 645–646 (1954)."

The learned counsel for the defendant argues that the defendant, USF&G, has no duty to defend the plaintiff in the suit filed by ACORN and that this contention is supported by a proper interpretation of the insurance policy and the allegations in the complaint filed by ACORN.

On the other hand, the learned attorneys for the plaintiff, Ritter, contend that a proper construction of the terms of the policy and the allegations contained in the complaint state a cause of action within the coverage of the policy and which must be resolved in the defendant's favor.

The Court has heretofore referred to the various provisions of the policy which show conclusively when the duty to defend rests upon the insurance company. The policy specifically provides that the company will indemnify the insured for loss suffered because of personal injury or property damage. Then we find that the words "personal injury" means and refers to libel or slander or publication or utterance in violation of individual's right of privacy.

Section 41–2401 of Arkansas Statutes Annotated (1947) (Official Edition) provides:

"A libel is a malicious defamation, expressed either by writing, printing, or by signs or pictures, or the like, tending to blacken the memory of one who is dead, or to impeach the honesty, integrity, veracity, virtue or reputation, or to publish the natural defects, of one who is living, and thereby expose him to public hatred, contempt and ridicule. [Rev.Stat., Ch. 44, div. 8, art. 2, § 1; C. & M.Dig., § 2390; Pope's Dig., § 3015.]"

Section 41–2405 defines and deals with slander, which is defined to be a crime and any person found guilty thereof is rather severely punished.

The Arkansas Criminal Code was rewritten effective January 1, 1976, but the former Section 41–2405 was retained precisely as hereinbefore set forth. The section pertaining to slander was changed some and the present Section relating thereto reads as follows:

"Slander shall be a felony; and any person who shall hereafter be found guilty of the crime of slander shall, upon conviction thereof, be imprisoned in the penitentiary, at hard labor, for a term of not less than six (6) months nor more than three (3) years, or fined not less than fifty ($50.00) nor more than three thousand dollars ($3,000.00), or both fine and imprisonment may be imposed." Arkansas Criminal Code, Section 41–3455.

Clearly, the allegations contained in ACORN's complaint against Ritter individually and as Mayor of the City of Springdale, Civil Action 76–51–C are such as to require the insurer of Ritter to defend the action.

Therefore, Judgment is being entered today requiring United States Fidelity and Guaranty Company to proceed at its own cost and peril with the defense of the suit filed by ACORN.