# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-3053

_____

| | | |
|---|---|---|
| Vincent Soybean & Grain Co., Inc., | * | |
| | * | |
| Plaintiff - Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Eastern District of Arkansas. |
| Lloyd's Underwriters of London, | * | |
| | * | **[TO BE PUBLISHED]** |
| Defendant - Appellee. | * | |

_____

Submitted:  April 13, 2001

Filed:  April 19, 2001

_____

Before McMILLIAN, LOKEN, and HANSEN, Circuit Judges.

_____

PER CURIAM.

Vincent Soybean & Grain Co., Inc. ("Vincent"), operates a grain and seed storage facility in Arkansas.  It obtained a seedsmen's errors and omissions insurance policy from Lloyd's Underwriters of London ("Lloyd's").  The policy term was one year commencing August 4, 1998.  On October 14, 1998, Vincent sought coverage under the policy for a claim by Parker Eubanks that Vincent had negligently stored and processed wheat seeds, rendering them unsuitable for planting.  Lloyd's assigned the claim to Keith Parr, its North American counsel for claims arising under seedsmen's E & O policies.

After an initial investigation, Parr informed Vincent that the claim may not be covered, but that Lloyd's would defend Vincent under a reservation of rights if Eubanks filed suit. Parr also warned Vincent not to settle with Eubanks without Lloyd's consent. Nonetheless, Vincent settled the claim with Eubanks for $54,666.42 without Lloyd's consent. Lloyd's refused to reimburse Vincent for the settlement amount, and Vincent filed this suit seeking damages for breach of contract and for the tort of bad faith. The district court[1] granted summary judgment in favor of Lloyd's. Vincent appeals. We affirm.

When Vincent settled with Eubanks without Lloyd's consent, Vincent violated Condition 3(b) of the policy:

> The Assured shall not, without [Lloyd's] written consent, admit liability for or settle any such claim for an amount in excess of the deductible. [Lloyd's] shall be entitled to direct the defense of any such claim, but the Assured shall render all reasonable co-operation and assistance.

The purpose of such a provision "is to prevent collusion and to invest the insurer with the complete control and direction of the defense or compromise of suits or claims." 14 RUSS & SEGALLA, COUCH ON INSURANCE § 203.3, at 203-8 (3d ed. 1999). Vincent's breach of this cooperation clause absolved Lloyd's of coverage liability unless "[Lloyd's] itself, in bad faith, breache[d] the contract by arbitrarily refusing to settle." Home Indem. Co. v. Snowden, 264 S.W.2d 642, 645 (Ark. 1954). In this context, an insurer acts in bad faith "where it unreasonably delays to take any action, after notice of the claim, or where it breaches its contract, by refusing to defend or settle and denying liability, or by withdrawing from the case." Id. at 646.

---

[1]The HONORABLE HENRY WOODS, United States District Judge for the Eastern District of Arkansas.

Lloyd's was not guilty of bad faith as defined in Snowden. It did not unreasonably delay or refuse to take action after notice of the claim -- Parr promptly investigated the claim by requesting documents and exchanging letters with Vincent, by speaking with Vincent's owner and insurance agent, and by seeking independent advice regarding the reasonableness of Eubanks's damage claim. Nor did Lloyd's refuse to defend. It accepted defense of the claim and never withdrew from the case. Some three months after notifying Lloyd's of the claim, Vincent wrote Parr, asserting that if Lloyd's did not take "all reasonable efforts" to settle the Eubanks claim within thirty days, Vincent "will no longer consider itself bound by Condition 3(b)." Vincent argues that Lloyd's acted in bad faith when it failed to comply with this demand. We disagree. Lloyd's never refused to settle. It simply refused to relinquish control of the settlement process. That was not bad faith; it was part of Lloyd's right to control defense of a claim it had agreed to defend.

Vincent further argues that Lloyd's was guilty of bad faith when it did not conduct additional investigation by hiring an independent adjuster, visiting Vincent's facilities, interviewing Eubanks, and hiring separate counsel to represent Vincent's interests. Assuming for summary judgment purposes that Lloyd's investigation had been inadequate at the time Vincent settled with Eubanks, this did not excuse Vincent's breach of its duty of cooperation. "Without any evidence of malice or ill will on the part of the insurer, the failure to investigate a claim resulting from a reasonable belief that the damages reported are not covered under the policy does not amount to the tort of bad faith." Reynolds v. Shelter Mut. Ins. Co., 852 S.W.2d 799, 801 (Ark. 1993). To be sure, Reynolds involved an insured's claim for first-party coverage, but the principle applies as well to a third-party coverage claim where the liability insurer has accepted tender of the defense and the third party has not yet filed a lawsuit or engaged in settlement negotiations controlled by the insurer.

Finally, Vincent argues that Lloyd's committed bad faith when it accepted defense of the claim under a reservation of rights, lacking a reasonable basis to demy

coverage.  Under <u>Snowden</u>, this contention fails as a matter of law because insurer bad faith that excuses a breach of the insured's duty to cooperate is defined as "refusing to defend . . . *and* denying liability."  Here, Lloyd's accepted the defense and only reserved its right to deny liability when all relevant facts were known.  Moreover, we agree with the district court that Lloyd's reasonably believed it might have one or more coverage defenses.  Condition 5 of the policy provided, "this insurance shall not be applicable to claims presented which may arise . . . from any . . . processing of seed prior to the effective date of this insurance."  Eubanks delivered seed with an unreasonably high moisture content to Vincent on June 10, 1998, well before the policy's August 4 effective date.  Vincent argues that Lloyd's may not rely on Condition 5 because it was not disclosed on the policy binder and Vincent did not receive a copy of the policy until after Eubanks made his claim.  However, the binder included "retroactive date-inception" in its list of conditions and identified the policy's effective date as August 4, 1998, providing sufficient notice of this coverage condition, which in any event is a usual term of a seedsmen's E & O policy and therefore deemed to be included in a policy binder.  <u>See</u> ARK. STAT. ANN. § 23-79-120(a).

Vincent ignored Lloyd's acceptance of the defense and seized control of the claim process by settling without Lloyd's consent.  No bad faith excused this violation of Condition 3(b).  In these circumstances, the judgment of the district court must be affirmed.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.

-4-