[J-86-2014] [MO: Baer, J.]
**IN THE SUPREME COURT OF PENNSYLVANIA**
**WESTERN DISTRICT**

| | |
|---|---|
| THE BABCOCK & WILCOX COMPANY AND B&W NUCLEAR ENVIRONMENTAL SERVICES, INC. | : No. 2 WAP 2014<br>:<br>: Appeal from the Order of the Superior<br>: Court entered July 10, 2013 at No. 525<br>: WDA 2012, vacating the Judgment of the<br>: Court of Common Pleas of Allegheny<br>: County entered February 17, 2012 at<br>: GD99-11498 and GD99-16227 and<br>: remanding. |
| v. | : |
| AMERICAN NUCLEAR INSURERS AND MUTUAL ATOMIC ENERGY LIABILITY UNDERWRITERS AND OTHER INTERESTED PARTY: ATLANTIC RICHFIELD COMPANY | :<br>: ARGUED: October 7, 2014<br>:<br>: |
| -------------------------------------------------------<br>-------------------------------------------------<br>AMERICAN NUCLEAR INSURERS AND MUTUAL ATOMIC ENERGY LIABILITY UNDERWRITERS | :<br>:<br>:<br>:<br>:<br>:<br>: |
| v. | : |
| THE BABCOCK & WILCOX COMPANY AND B&W NUCLEAR ENVIRONMENTAL SERVICES, INC., AND ATLANTIC RICHFIELD COMPANY | :<br>:<br>:<br>:<br>: |
| APPEAL OF: BABCOCK & WILCOX POWER GENERATION GROUP, INC. (F/K/A THE BABCOCK & WILCOX COMPANY) AND BABCOCK & WILCOX TECHNICAL SERVICES GROUP, INC. (F/K/A B&W NUCLEAR ENVIRONMENTAL SERVICES, INC.), AND ATLANTIC RICHFIELD COMPANY | :<br>:<br>:<br>:<br>:<br>:<br>:<br>: |

**<u>CONCURRING AND DISSENTING OPINION</u>**

**MR. JUSTICE EAKIN**                              **DECIDED: July 21, 2015**

I agree the Superior Court erred in applying the "insured's choice" paradigm described in Taylor v. Safeco Insurance Company, 361 So. 2d 743 (Fla. Dist. Ct. App. 1978). However, because I would affirm the Superior Court's decision to vacate the trial court's judgment and remand for further proceedings, albeit on different grounds, I respectfully dissent from the rest of the majority's decision.

Appellees American Nuclear Insurers and Mutual Atomic Energy Liability Underwriters (collectively, ANI) provided insurance coverage to appellants, The Babcock & Wilcox Company, B&W Nuclear Environmental Services, and Atlantic Richfield Company, for liability arising from a "nuclear energy hazard."[1] The terms of coverage are contained in the applicable insurance contracts executed by the parties. During the relevant coverage periods, appellants were sued by various claimants for damages allegedly arising from exposure to radiation emission from the insured nuclear energy facilities. Appellants sought coverage from ANI under the applicable policies, which provide the insureds "shall not, except at [their] own cost, make any payment, assume any obligation or incur any expense[,]" Nuclear Energy Liability Policy (Facility Form), at 3, Condition 6, and also, as a condition precedent to the insureds' right to maintain a coverage action against ANI for liability determined by settlement, any settlement must be "by written agreement of the insured, the claimant and [ANI,]" id., Condition 7. The policy expressly excludes coverage for "liability assumed by the insured[s] under contract[.]" Id., at 2, Exclusion (c).

---

[1] The insured hazard is defined as "the radioactive, toxic, explosive or other hazardous properties of nuclear material, but only if (1) the nuclear material is at the facility or has been discharged or dispersed therefrom without intent to relinquish possession or custody thereof to any person or organization[.]" Nuclear Energy Liability Policy (Facility Form), at 1, para. III.

ANI agreed to defend the underlying litigation in its entirety, while simultaneously informing appellants it would not waive its right to deny ultimate coverage on the basis of various exclusions and conditions in the insurance policy. ANI Letter, 6/20/94, at 4. Such "reservation of rights letters" are common in cases where causation and coverage are uncertain. See, e.g., American and Foreign Insurance Company v. Jerry's Sports Center, Inc., 2 A.3d 526, 545-46 (Pa. 2010) (stating insurer uncertain about duty to indemnify may offer defense under reservation of rights to avoid risks of potential bad faith claim or inept defense of underlying action by insured exposing insurer to payment if there is duty to indemnify); Whole Enchilada, Inc. v. Travelers Property Casualty Company of America, 581 F. Supp. 2d 677, 685 n.6 (W.D. Pa. 2008) (finding reservation of rights is unilateral, written notice from insurer to policyholder that insurer may disclaim coverage based on terms in insurance policy, legal principles precluding coverage, violation of policy provisions by insured, or some combination of those factors); see also Perkoski v. Wilson, 92 A.2d 189, 191 (Pa. 1952) (holding insurer's failure to reserve rights while providing defense to underlying claim results in waiver of right to deny coverage of judgment against insured).

ANI conducted its investigation into the underlying claims, engaged numerous radiation experts, and considered appellants' exposure in light of the strict causation standard adopted in In re TMI Litigation, 193 F.3d 613, 643 (3d Cir. 1999), opinion amended, 199 F.3d 158 (3d Cir. 2000) ("[C]ausation can only be established (if at all) from epidemiological studies of populations exposed to ionizing radiation."). ANI concluded the claims in the underlying litigation lacked scientific and legal merit, and thus elected to aggressively defend the claims. Appellees' Brief, at 7 (citing N.T. Trial, 9/14/11, at 1317-18). During this period — which included delays arising from B&W's bankruptcy, test trial, and retrial, as well as settlement discussions — ANI apparently paid more than

$40 million in defense costs before appellants entered into their unauthorized settlement agreements. Id., at 13 (citing N.T. Trial, 9/14/11, at 1312-13).

It is well-established in Pennsylvania that an insurer exercising its right not to settle may not be held liable for essentially guessing incorrectly about the ultimate result of underlying litigation, as long as the insurer did not act in bad faith. Cowden v. Aetna Casualty & Surety Company, 134 A.2d 223 (Pa. 1957). In cases such as this one, where contractual terms vest in the insurer the right to control litigation falling within the policy's coverage, the insurer "must act with the utmost good faith toward the insured in disposing of claims against the latter." Id., at 228. There is no "absolute duty" on the part of the insurer to settle a claim, even when a possible judgment against the insured might exceed the amount of insurance coverage. Id. However,

> the decision to expose the insured to personal pecuniary loss must be based on a bona fide belief by the insurer, predicated upon all of the circumstances of the case, that it has a good possibility of winning the suit. ... Good faith requires that the chance of a finding of nonliability be real and substantial and that the decision to litigate be made honestly.

Id.; see also Birth Center v. St. Paul Companies, 787 A.2d 376, 379 (Pa. 2001) ("Where an insurer refuses to settle a claim that could have been resolved within policy limits without 'a bona fide belief ... that it has a good possibility of winning,' it breaches its contractual duty to act in good faith and its fiduciary duty to its insured.").

The majority distinguishes Cowden on the basis it did not involve an unauthorized settlement, Majority Slip Op., at 21, but in my view, this is a distinction without a difference. The law is clear that the parties to an insurance contract must act in accordance with the terms of that contract, and an insurer owes its insured a duty of "the utmost good faith." Cowden, at 228. In this case, there has been no determination about whether ANI acted reasonably when it decided to defend the underlying litigation rather than settle, but it is apparent — as long as ANI acted in good faith — it was within

its rights to do so. The majority's decision to reinstate the trial court's judgment in favor of appellants, based on out-of-state, non-precedential decisions is problematic, at best, given the existence of binding case law from this Court. See Babcock & Wilcox Company v. American Nuclear Insurers, 76 A.3d 1, 23 (Pa. Super. 2013) (Olson, J., concurring and dissenting) ("[E]stablished and controlling Pennsylvania law compels the conclusion that since ANI tendered a defense subject to a reservation of its rights to contest coverage, B&W remained committed to observe its obligations under the consent-to-settlement clause in the parties' insurance contract unless B&W could establish bad faith on the part of ANI pursuant to [Cowden.]").

The ANI policies expressly authorize ANI to maintain control over litigation by rejecting settlement offers, as long as it acts in good faith. ANI's reservation of its rights under the same contract did not alter this fundamental principle. The Superior Court majority treated ANI's reservation of rights letter as a trigger for the "insured's choice" of rejecting coverage under the express terms of the contract, Babcock & Wilcox Company, at 22, and the majority here interprets ANI's reservation of rights as a pivotal action "asserting that the claims may not be covered by the policy." Majority Slip Op., at 2. But, a typical reservation-of-rights letter is neither of these things; it simply puts the insured on notice — reminds the insured, actually — of various existing contractual provisions that might ultimately preclude coverage under the policy, depending upon what discovery and litigation reveals about the claims and potential liability. A reservation of rights — without more — does not change the terms of the contract, does not constitute a refusal to defend or a breach of contract, and therefore should not authorize the insured to take anticipatory action violating that contract. Thus, ANI's conduct in reserving its rights, in the absence of bad faith, was not a repudiation or breach of the insurance contract allowing appellants to settle without permission. Moreover,

under Cowden, an insured may recover payment from an insurer for an excess verdict or to reimburse an unauthorized settlement — essentially, damages resulting from the insurer's breach of contract — but only if the insured can establish by clear and convincing evidence that the insurer breached its duty to act in good faith. Cowden, at 229. The trial court and Superior Court majority did not apply these basic principles, but instead imported unnecessary new standards from United Services Automobile Association v. Morris, 741 P.2d 246 (Ariz. 1987), and Taylor, and the majority now applies a third "hybrid" test purporting to combine Morris and Cowden. Although the majority's attempt to reconcile these standards is laudable and, at first blush, appealing, I nevertheless must disagree.

The Cowden bad faith standard and the Morris "fair and reasonable settlement" standard both present ways of balancing the interests of the contracting parties and analyzing the questions of who breached the contract, and whether the breaching conduct was somehow justified under the law. Under Cowden, the insurer may enforce the language of the insurance contract both parties executed as long as the insurer does not anticipatorily breach that contract by repudiating its obligations under the policy or otherwise engaging in bad faith conduct. Cowden, at 227; see also Alfiero v. Berks Mutual Leasing Co., 500 A.2d 169, 171-72 (Pa. Super. 1985) (stating despite policy language requiring insurer's permission to settle, insured could settle claim without insurer's consent where insurer repeatedly denied any and all obligation to defend or indemnify insured); Vincent Soybean & Grain Co., Inc. v. Lloyd's Underwriters of London, 246 F.3d 1129, 1132 (8th Cir. 2001) (holding insurer issued reservation of rights and defended underlying claim but insured settled without permission, breaching policy terms; insured may not recover amount it paid to settle claim in absence of bad faith by insurer). The concept of relieving the insured of its obligations under an insurance policy when the

insurer has violated its own duties under that policy comports with general contract principles applied outside the insurance coverage context. See, e.g., LJL Transportation, Inc., v. Pilot Air Freight Corporation, 962 A.2d 639, 641, 652 (Pa. 2009) (finding material breach by one party terminates contract and relieves non-breaching party from its own duties under contract). However, applicable Pennsylvania law does not treat an insurer's good-faith decision to defend a claim rather than settle it as a breach of contract that triggers a free-for-all where the insured may take it upon itself to settle the case without permission in violation of the policy terms.

The Morris "fair and reasonable" standard, by contrast, essentially allows an insured to breach the contract's requirement that the insurer must consent to any settlement when the insured anticipates an excess future verdict and, as a practical matter, permits the insured to determine for itself (in the first instance) that the insurer acted unreasonably in refusing to settle.[2] There may be strong policy reasons for endorsing this latter method of analysis, as recognized by the majority here and by Judge Wettick at the trial court level, or even the "insured's choice" Taylor rationale adopted sua sponte by the Superior Court, but Cowden is the applicable law in Pennsylvania and provides the approach that enforces the actual terms of the contract entered into by the parties, rather than allowing one party to nullify those terms when it sees fit. See, e.g., AAA Mid-Atlantic Insurance Company v. Ryan, 84 A.3d 626, 632-33 (Pa. 2014) (holding court must give plain meaning to clear and unambiguous terms of insurance contract unless provision violates clearly expressed public policy); Jerry's Sport Center, Inc., at

---

[2] I recognize the Arizona court holds the "cooperation clause prohibition against settling without the insurer's consent forbids an insured from settling only claims for which the insurer unconditionally assumes liability under the policy." Morris, at 252 (emphasis added). However, the cooperation requirement in the ANI policy is not limited in this way.

540 (stating rules of contract interpretation apply to insurance contracts; mutual intention of parties at time they formed contract governs its interpretation). The majority's rationale allows an insured to alter the nature of the bargain it struck with its insurer.

Accordingly, I would affirm the Superior Court's decision to vacate the trial court's judgment and remand for further proceedings. I would not, however, direct that those proceedings consist of findings pursuant to <u>Taylor</u>, but instead would direct the trial court to determine whether ANI acted in bad faith in refusing to settle the underlying litigation, pursuant to this Court's holding in <u>Cowden</u>.

Mr. Chief Justice Saylor joins this concurring and dissenting opinion.